

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-26-1997

# Clinton Cty Comm v. EPa

Precedential or Non-Precedential:

Docket 96-7683

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"Clinton Cty Comm v. EPa" (1997). *1997 Decisions.* Paper 140.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/140

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed June 26, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 96-7683

CLINTON COUNTY COMMISSIONERS;
ARREST THE INCINERATOR REMEDIATION, INC.
("A.I.R., INC."),
Appellants

v.

UNITED STATES ENVIRONMENTAL PROTECTION
AGENCY; CAROL BROWNER

On Appeal From the United States District Court
For the Middle District of Pennsylvania
(D.C. Civil Action No. 96-cv-00181)

Argued February 7, 1997

BEFORE: STAPLETON and MANSMANN, Circuit Judges,
and RESTANI,* Judge, Court of International Trade

Reargued En Banc April 16, 1997

BEFORE: SLOVITER, Chief Judge, BECKER, STA PLETON,
MANSMANN, GREENBERG, SCIRICA, COWEN, NYGAARD,
ALITO, ROTH, LEWIS and MCKEE, Circuit Judges

(Opinion Filed June 26, 1997)

_____

*Hon. Jane A. Restani, Judge of the United States Court of International
Trade, sat by designation as a member of the original panel but did not
participate in the en banc hearing.

Mick G. Harrison (Argued)
GreenLaw
P.O. Box 467
Berea, KY 40403
 and
J. Michael Wiley
Rieders, Travis, Mussina,
 Humphrey & Harris
161 West 3rd Street
P.O. Box 215
Williamsport, PA 17703
 Attorneys for Appellants

Lois J. Schiffer
Assistant Attorney General
Michael D. Rowe
David C. Shilton
Evelyn S. Ying (Argued)
Department of Justice
Environment & Natural Resources
 Division
Washington, D.C. 20026
 and
Frederick E. Martin
Office of the U.S. Attorney
240 West Third Street
P.O. Box 548
Williamsport, PA 17703
 Attorneys for Appellees

**OPINION OF THE COURT**

STAPLETON, <u>Circuit Judge</u>:

Plaintiffs Clinton County Commissioners and Against the Incinerator Remediation, Inc. (AIR) brought this suit against the United States Environmental Protection Association (EPA) to enjoin EPA from proceeding with a trial burn and incineration remedy at the Drake Chemical Company site in Lock Haven, Pennsylvania. Plaintiffs allege that the incineration remedy would violate multiple federal environmental laws because it would release ultra-toxic

2

substances into the air and thereby cause irreparable harm to nearby land and residents.

The district court dismissed plaintiffs' suit for lack of subject matter jurisdiction, concluding that the judicial review provisions of the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) precluded the court from exercising jurisdiction, under any federal law, until EPA's remedial activities at the site are completed. The court also concluded that it lacked jurisdiction to review EPA's actions under Leedom v. Kyne, 358 U.S. 184 (1958), and that its failure to exercise jurisdiction did not deprive plaintiffs of any constitutional right of access to the courts. A panel of this court, considering itself bound by the earlier decision in United States v. Princeton Gamma-Tech, Inc., 31 F.3d 138 (3d Cir. 1994), reversed and remanded the case for further proceedings. However, the panel recommended that the case be heard in banc so that the full court could reconsider Princeton Gamma-Tech. Having granted rehearing in banc, we will now overrule that portion of Princeton Gamma-Tech on which plaintiffs rely and affirm the district court's dismissal of plaintiffs' suit for lack of subject matter jurisdiction.

I.

A chemical manufacturing facility operated on the Drake Chemical site from the 1940s to 1982, leaving soils and sludges, chemical storage tanks and wastewater lagoons highly contaminated with a variety of toxic contaminants considered hazardous to human health and the environment. In 1982, EPA took over the site and instituted clean-up efforts pursuant to its response authority under CERCLA. In 1988, EPA decided, after notice and an opportunity for public comment, to remediate the site by excavating the contaminated soils, treating them with an on-site mobile incinerator, and placing the treated soils back onto the site. The incineration contract was awarded in September 1993.

The first step in the implementation of the incineration remedy involves a "trial burn" in which site soils are fed

3

into the incinerator and data is gathered to (1) verify that the incinerator will meet performance standards, (2) determine appropriate operating requirements, and (3) evaluate the potential risks from operation of the incinerator and determine whether the remedy should proceed. Prior to conducting the trial burn at the Drake site, EPA agreed, at the request of the public, to conduct a risk assessment to determine the potential health risks from the trial burn itself. It released the risk assessments to the public, held a public meeting, responded to written comments concerning the assessments, and then, in January 1996, instructed the contractor to proceed with the trial burn.

On February 1, 1996, the Commissioners and AIR filed a complaint under 42 U.S.C. § 9659, the citizen suit provision of CERCLA, seeking to enjoin the trial burn and incineration remedy from proceeding. Plaintiffs alleged that the planned incineration (both the trial burn and the full incineration project) would result in the emission into the air of dangerous amounts of highly toxic chemicals that would contaminate the local air, soil, and food chain, creating an unacceptable risk of cancer and other serious illnesses. The complaint alleged in five counts that the incineration would violate the hazardous waste disposal requirements of the Resource Conservation and Recovery Act (RCRA), EPA's mandate under CERCLA to protect public health and the environment, and certain requirements imposed by the National Environmental Policy Act (NEPA).

The district court ordered EPA to keep the incinerator shut down until a decision could be reached on plaintiffs' motion for a preliminary injunction. Early in March, as the district court was conducting an evidentiary hearing on the motion, EPA apparently admitted that there were some problems with its health risk assessment, sought a continuance of the hearing until it could correct those problems, and agreed to keep the incinerator shut down in the meantime. The agreement was memorialized in a Consent Order.

Before the resumption of the preliminary injunction hearing but after the jurisdictional issue had been briefed

4

by the parties, the district court dismissed plaintiffs' complaint for lack of subject matter jurisdiction. The court held that (1) CERCLA's "timing of review" provision precluded the court from exercising jurisdiction over a citizens' suit challenging an EPA remedial action prior to the completion of the action and (2) that the citizen suit provision of CERCLA was the exclusive remedy available to plaintiffs and precluded the court from predicating jurisdiction on RCRA or NEPA. Plaintiffs filed a motion for reconsideration. The district court denied the motion, rejecting the plaintiffs' contentions that (1) the court had independent jurisdiction to review the EPA actions at the Drake site because those actions were clearly in excess of EPA's authority and (2) dismissal of the complaint violated plaintiffs' constitutional right of access to the courts. Plaintiffs timely appealed the district court's decisions.

II.

Because federal courts are courts of limited jurisdiction, a plaintiff may invoke the jurisdiction of a federal court only pursuant to a statutory grant of authority to adjudicate the asserted claim. See Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994); In re Morrissey, 717 F.2d 100, 102 (3d Cir. 1983). Moreover, when the plaintiff seeks to sue the United States or an instrumentality thereof, he may not rely on the general federal question jurisdiction of 28 U.S.C. § 1331, but must identify a specific statutory provision that waives the government's sovereign immunity from suit. See United States v. Sherwood, 312 U.S. 584, 586 (1941). A waiver of immunity must be "unequivocally expressed," United States v. Nordic Village, Inc., 503 U.S. 30, 33 (1992) (quoting United States v. Mitchell, 445 U.S. 535, 538 (1980)), and is "construed strictly in favor of the sovereign." Id. (quoting McMahon v. United States, 342 U.S. 25, 27 (1951)).

Plaintiffs here argue that there are four grounds for the district court's exercising subject matter jurisdiction over their complaint: (1) 42 U.S.C. § 9659 confers jurisdiction, despite 42 U.S.C. § 9613(h), because the complaint makes bona fide allegations of irreparable harm to public health or the environment; (2) if 42 U.S.C. § 9613(h) precludes the

5

court from exercising jurisdiction, it must be set aside when irreparable harm is alleged in order to effectuate plaintiffs' constitutional right of access to the courts at a meaningful time; (3) the citizen suit provision of RCRA confers jurisdiction; and (4) the district court had jurisdiction to review EPA's actions in remediating the Drake Chemical site under Leedom v. Kyne, 358 U.S. 184 (1958), because the challenged actions are in excess of EPA's authority. We hold that none of these alternatives affords the district court subject matter jurisdiction over plaintiffs' suit.

A.

Plaintiffs point first to the citizen suit provision of CERCLA as the source of the district court's subject matter jurisdiction over their claims against EPA. Section 9659(a)(2) of CERCLA, as amended, provides:

Except as provided in subsections (d) and (e) of this section [relating to notice] and in section 9613(h) of this title (relating to timing of judicial review), any person may commence a civil action on his own behalf-- ...

 (2) against the President or any other officer of the United States (including the Administrator of the Environmental Protection Agency and the Administrator of the ATSDR) where there is alleged a failure of the President or of such other officer to perform any act or duty under this chapter ... which is not discretionary with the President or such officer.

42 U.S.C. § 9659(a)(2). According to its terms, the scope of the cause of action authorized by the section is limited by § 9613(h), "relating to timing of judicial review," which provides, in part:

No Federal court shall have jurisdiction under Federal law ... to review any challenges to removal or remedial action selected under section 9604 of this title, ... in any action except one of the following: ...

 (4) An action under section 9659 of this title (relating to citizens suits) alleging that the removal or remedial

6

action <u>taken</u> under section 9604 of this title or <u>secured</u> under section 9606 of this title <u>was</u> in violation of any requirement of this chapter. Such an action may not be brought with regard to a removal where a remedial action is to be undertaken at the site.

42 U.S.C. § 9613(h)(4) (emphasis added).

The district court held that Congress's description of § 9613(h) as "relating to timing of judicial review" and its use of the past tense in § 9613(h)(4) indicate that Congress intended to authorize federal court challenges to remedial action under CERCLA's response provision only <u>after</u> the remedial action has been completed. Accordingly, the court found that because plaintiffs' complaint was filed well before the completion of EPA's remedial action at the Drake Chemical site, § 9613(h)(4) expressly deprived the court of jurisdiction to entertain the portion of plaintiffs' complaint alleging that EPA violated CERCLA's requirements for selection and implementation of cleanup remedies.

Plaintiffs argue on appeal that the district court erred in failing to recognize an exception to § 9613(h)(4) when a citizens' suit is grounded in <u>bona fide</u> allegations of irreparable harm to public health or the environment. <u>See United States v. Princeton Gamma-Tech, Inc.</u>, 31 F.3d 138, 148-49 (3d Cir. 1994). Based on our independent review of the text of § 9613(h)(4), its legislative history and the caselaw interpreting it, we agree with the district court and hold that Congress intended to preclude <u>all</u> citizens' suits against EPA remedial actions under CERCLA until such actions are complete, regardless of the harm that the actions might allegedly cause.

We begin, as we must when interpreting a statutory provision, with the plain language of the statute. <u>See New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.</u>, 101 F.3d 1492, 1498 (3d Cir. 1996); <u>Smith v. Fidelity Consumer Discount Co.</u>, 898 F.2d 907, 909 (3d Cir. 1990). Section 9613(h)(4) expressly states that the citizen suit exception to the preclusion of federal court jurisdiction over challenges to EPA removal or remedial actions applies only to review of actions that have been "taken." Given that the subsection specifically deals with the "<u>timing</u> of review," we

7

find Congress's use of the past tense significant, and a clear indication of its intention that citizen-initiated review of EPA removal or remedial actions take place only <u>after</u> such actions are complete.

This interpretation is reinforced by the fact that the opening sentence of § 9613(h), which establishes the general preclusion of federal court jurisdiction, prohibits review of any challenge to a remedial action "selected" under § 9604, while the exception allows for review in citizens' suits alleging that actions "taken" under § 9604 were in violation of CERCLA. Because the exception is presumably more narrow than the prohibition, a remedial action "taken" must be something other than a remedial action "selected." We think that the most reasonable distinction between the two terms is that a remedial action "selected," which federal courts have no jurisdiction to review, is one chosen but not fully implemented, while a remedial action "taken," which a federal court may review for compliance with the requirements of CERCLA, is one that was chosen <u>and</u> has been completed.

We also find the last sentence of § 9613(h)(4) supportive of our interpretation of the statute. According to that sentence, "an action may not be brought with regard to a removal where a remedial action <u>is to be undertaken</u> at the site." 42 U.S.C. § 9613(h)(4) (emphasis added). A "removal" action is an action taken in the short term to "prevent, minimize, or mitigate damage" to public health or the environment from the release or threatened release of a hazardous substance, 42 U.S.C. § 9601(23), while a "remedial" action involves a "permanent remedy taken instead of or in addition to removal actions" to contain a hazardous substance and minimize harm to public health and the environment. 42 U.S.C. § 9601(24). Thus, EPA may take both "removal" and "remedial" actions at the same site with respect to the same "release" of hazardous materials. The concluding sentence of § 9613(h)(4) provides that in such situations a citizens' suit challenging a "removal" action may not be brought even after completion of that removal action, so long as "remedial" action remains "to be undertaken." This provision demonstrates beyond peradventure, we believe, that Congress intended to

8

preclude any judicial involvement in EPA removal and remedial actions until after such actions are complete.

Although our conclusion that the statutory language is clear means that we need not consult legislative history, see Darby v. Cisneros, 509 U.S. 137, 147 (1993); Dresser Indus., Inc. v. Underwriters at Lloyd's of London, 106 F.3d 494, 497 (3d Cir. 1997), we do so and find that that history supports our conclusion that Congress enacted § 9613(h) to prevent judicial interference, however well-intentioned, from hindering EPA's efforts to promptly remediate sites that present significant danger to public health and the environment. For example, the Conference Report on the Superfund Amendments of 1986 provides that

[i]n new section [9613(h)(4)] of the substitute, the phrase "removal or remedial action taken" is not intended to preclude judicial review until the total response action is finished if the response action proceeds in distinct and separate stages. Rather an action ... would lie following completion of each distinct and separable phase of the cleanup.... Any challenge under this provision to a completed stage of a response action shall not interfere with those stages of the response action which have not been completed.

H.R. Conf. Rep. No. 99-962, at 224 (1986), reprinted in 1986 U.S.C.C.A.N. 3276, 3317 (emphasis added). This language clearly indicates that Congress intended to preclude judicial review of response actions or portions thereof that are ongoing, i.e. "have not been completed."

Similarly, the Report of the House Committee on Energy and Commerce commented that § 9613(h) codified the established principle that "there is no right of judicial review of the Administrator's selection and implementation of response actions until after the response action [sic] have been completed to their completion." H.R. Rep. No. 99-253(I), at 81 (1985), reprinted in 1986 U.S.C.C.A.N. 2835, 2863; see also H.R. Rep. No. 99-253(III), at 22 (1985), reprinted in 1986 U.S.C.C.A.N. 3038, 3045 ("[T]he Judiciary Committee amendment reaffirms that, in the absence of a government enforcement action, judicial review of the selection of a response action should generally be

9

postponed until after the response action is taken.").1 The Report of the House Committee on Public Works and Transportation explained the rationale for precluding all judicial review until after completion of remedial actions:

The purpose of [§ 9613(h)] is to ensure that there will be no delays associated with a legal challenge of the particular removal or remedial action selected under section [9604] or secured ... under section [9606]. Without such a provision, responses to releases or threatened releases of hazardous substances could be unduly delayed, thereby exacerbating the threat of damage to human health or the environment. A person's rights to challenge the choice of removal or remedial action are preserved, however, and can be exercised ... [through] a citizen suit alleging that the removal or remedial action was in violation of any requirement of the Act ....

H.R. Rep. No. 99-253(V), at 25-26 (1985), reprinted in 1986 U.S.C.C.A.N. 3124, 3148-49 (emphasis added).

Were we to adopt the plaintiffs' interpretation of § 9613(h)(4) and permit judicial review of EPA remedial actions before completion whenever a challenge includes bona fide allegations of irreparable harm to public health or the environment, we would undermine Congress's clearly expressed intent because we would create a situation in which response actions could be seriously delayed while EPA refutes allegations of irreparable harm which, while "bona fide," may simply reflect a legitimate difference of opinion about the preferred remedy for a particular site. Congress clearly intended that such differences of opinion

_____

1. The Judiciary Committee proposed an amendment that would have allowed citizens to "seek review of remedial actions (not removal actions) during construction and implementation of such actions when a specific remedial measure that has been constructed is allegedly in violation of a requirement of this Act." The provision would not have allowed a challenge to the selection of the remedy, but only to its implementation. Id. at 23, reprinted in 1986 U.S.C.C.A.N. at 3046. The fact that Congress did not enact the Judiciary Committee's proposed amendment demonstrates its commitment to preventing all judicial interference with remedial actions.

10

be communicated directly to EPA during the pre-remediation public notice and comment period, not expressed in court on the eve of the commencement of a selected remedy.[2]

The courts of appeals of the Seventh, Eighth, Ninth and Eleventh Circuits have read §§ 9613(h)(4) and 9659(a)(2) in the same way as we today read it. Each of these courts of appeals has held that these sections do not permit district courts to exercise jurisdiction over citizen suits challenging incomplete EPA remedial actions even where impending irreparable harm is alleged. Schalk v. Reilly, 900 F.2d 1091, 1095-96 (7th Cir. 1990); Arkansas Peace Ctr. v. Arkansas Dep't of Pollution Control & Ecology, 999 F.2d 1212 (8th Cir. 1993); Hanford Downwinders Coalition, Inc. v. Dowdle, 71 F.3d 1469, 1484 (9th Cir. 1995); Alabama v. United States Envtl. Protection Agency, 871 F.2d 1548, 1557 (11th Cir. 1989).

The majority in Princeton Gamma-Tech rejected this "absolute" reading of § 9613(h)(4) because it found that a complete prohibition of judicial review of citizens' suits that allege irreparable harm to public health and the environment was "contrary to the objectives of CERCLA,"

_____

2. In Princeton Gamma-Tech, we noted the existence of some support in the legislative history for the plaintiffs' interpretation of section 9613(h)(4), that judicial review of incomplete EPA remedial actions is permitted whenever a challenge includes bonafide allegations of irreparable harm to public health or the environment. 31 F.3d at 145-46. In this regard, Senator Stafford remarked:

It is crucial, if it is at all possible, to maintain citizens' rights to challenge response actions, or final cleanup plans, before such plans are implemented even in part because otherwise the response could proceed in violation of the law and waste millions of dollars of Superfund money before a court has considered the illegality. . . . [C]itizens asserting a true public health or environmental interest in the response cannot obtain adequate relief if an inadequate cleanup is allowed to proceed. . . .

132 Cong. Rec. 28,409. Similar statements by Rep. Roe, Senator Mitchell, and Rep. Florio can also be found in the Congressional record. See id. at 29,754; 28,429 and 29,741. Notwithstanding these conflicting views, Congress weighed public policy and chose the elaborate pre-remediation public review and comment procedures over judicial review.

11

31 F.3d at 148, and "ma[de] the citizens' suit provision an absurdity." Id. We are less convinced than was the Princeton Gamma-Tech majority, however, that the absolute limitation on judicial review established by § 9614(h)(4) is either absurd or "contrary to the objectives of CERCLA." First, EPA removal and remedial actions are designed to deal with situations involving grave and immediate danger to the public welfare. As we have noted, Congress apparently concluded that delays caused by citizen suit challenges posed a greater risk to the public welfare than the risk of EPA error in the selection of methods of remediation. Second, while Congress limited judicial review through § 9613(h), it did not thereby exclude the public from playing a role in ensuring that EPA actions under CERCLA are consistent with the objectives of the statute. Instead, Congress made the policy choice to substitute elaborate pre-remediation public review and comment procedures, see, e.g., 42 U.S.C. 9617; 40 C.F.R. pt. 300, for judicial review. In addition, it gave the states, as representatives of the public, a significant role in the enforcement, in federal court, of the substantive standards established for remedial actions. See 42 U.S.C. § 9621(e)(2). Finally, Congress apparently left citizens the option of obtaining relief in state court nuisance actions. See H.R. Conf. Rep. No. 99-962, at 224 (1986), reprinted in 1986 U.S.C.C.A.N. 3276, 3317 ("New section [9613(h)] is not intended to affect in any way the rights of persons to bring nuisance actions under State law with respect to releases or threatened releases of hazardous substances, pollutants, or contaminants."). Finally, even if we perceived an arguable tension between our reading and the objectives of CERCLA, our conclusion would not be altered. When statutory language is as clear as it is here, "it is simply not [the] function [of] a reviewing court to act as a super-legislature and second-guess the policy choices that Congress made." Princeton Gamma-Tech., 31 F.3d at 153 (Nygaard, J., concurring).

Because we find that the plain language and legislative history of § 9613(h)(4) compel the conclusion that Congress intended to prohibit federal courts from exercising subject matter jurisdiction over all citizens' suits challenging incomplete EPA remedial actions under CERCLA, we will

overrule that portion of <u>Princeton Gamma-Tech</u> which held that a district court has jurisdiction under § 9613(h)(4) during the pendency of an EPA remedial action when plaintiffs make <u>bona fide</u> allegations of irreparable harm. Accordingly, we hold that the district court lacked subject matter jurisdiction under CERCLA's citizen suit provision to entertain plaintiffs' challenge to EPA's implementation of the incineration remedy selected for the Drake Chemical site.

B.

Plaintiffs next contend that if § 9613(h)(4) precludes the district court from exercising jurisdiction over their suit, then the provision constitutes, in the circumstances present here, an unconstitutional impediment to their right of access to the courts at a meaningful time. Plaintiffs characterize the issue presented by their constitutional argument as "whether the Constitution provides for judicial review of agency actions that threaten to take the very lives of Plaintiffs at a time when such harm may still be prevented (a meaningful time), notwithstanding statutory limitations on judicial review such as those in 42 U.S.C. § 9613(h)." Appellant's Brief at 27. Plaintiffs argue that the Constitution requires such review when there has been a "considerable showing of threatened irreparable harm and illegality," because at that point "there is no legitimate government interest in protecting the illegal and dangerous agency conduct from judicial action." <u>Id.</u> at 28-29.

We find plaintiffs' constitutional argument unpersuasive because it is inconsistent with established principles of sovereign immunity. Because EPA is an instrumentality of the federal government, it is entitled to sovereign immunity from suit. That being the case, Congress is absolutely free to limit the extent to which it consents to suit against the EPA. <u>See</u>, <u>e.g.</u>, <u>Maricopa County, Ariz. v. Valley Nat'l Bank of Phoenix</u>, 318 U.S. 357, 362 (1943) ("[T]he power to withdraw the privilege of suing the United States or its instrumentalities knows no limitations."); <u>Lynch v. United States</u>, 292 U.S. 571, 581 (1934) ("[C]onsent to sue the United States is a privilege accorded, not the grant of a property interest protected by the Fifth Amendment. The

13

consent may be withdrawn ...."); Heller v. United States, 776 F.2d 92, 98 (3d Cir. 1985) ("Congress' power to remove a right to sue the government is absolute.... Thus, statutes either denying or withdrawing judicial remedies against the United States in respect to claims against it are constitutional.") (internal quotations and citations omitted); Susquehanna Valley Alliance v. Three Mile Island Nuclear Reactor, 619 F.2d 231, 245 (3d Cir. 1980) ("Congress can, of course, limit the subject matter jurisdiction of the federal courts, and can relegate some matters to the exclusive jurisdiction of an administrative agency. It can also prohibit private enforcement of federal statutes."). Under this well-recognized principle of sovereign immunity, plaintiffs cannot claim that they have a constitutional right to sue EPA in federal district court simply because they allege that an incineration remedy to be taken by EPA may cause irreparable harm. Thus, we hold that plaintiffs are not excused from the jurisdictional limitations imposed by § 9613(h)(4) by a constitutional right of access to the court.

## C.

Plaintiffs further argue that the district court has jurisdiction under the citizen suit provision of RCRA to hear their claims that the Drake Chemical site remedial activity will violate the hazardous waste treatment and disposal standards of RCRA. RCRA's citizen suit provision provides:

Except as provided in subsection (b) or (c) of this section, any person may commence a civil action on his own behalf-- ...

 (1)(B) against any person, including the United States and any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution, and including any ... past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment.

14

42 U.S.C. § 6972(a)(1)(B). Plaintiffs asserted three claims under this provision, alleging that the Drake Chemical site incineration remedy was inconsistent with RCRA's disposal requirements and posed an "imminent and substantial endangerment" to public health and the environment.[3] The district court held that it was precluded from entertaining plaintiffs' RCRA claims by § 9613(h), which deprives the federal courts of jurisdiction "to review any challenges to removal or remedial action selected under section 9604." 42 U.S.C. § 9613(h) (emphasis added). Because the court found that the RCRA claims were brought to stop a remedial action selected under section 9604, it held that the claims constituted a challenge to a CERCLA action that could only be brought under one of the exceptions to § 9613(h). Since the court had already held that the only asserted exception, § 9613(h)(4), was inapplicable, it dismissed the RCRA claims for lack of jurisdiction.

In reaching its decision, the district court relied on Boarhead Corp. v. Erickson, in which we held that the district court lacked subject matter jurisdiction over plaintiff 's suit under the National Historic Preservation Act (NHPA) to stay EPA's CERCLA-related pre-cleanup activities on its historic farm. 923 F.2d 1011, 1013-14 (3d Cir. 1991). We found that the plain language of § 9613(h) precluded the exercise of jurisdiction over a challenge to an ongoing CERCLA removal or remedial action under any federal law:

Congress could hardly have chosen clearer language to express its intent generally to deprive the district court of jurisdiction over claims based on other statutes when the EPA undertakes the clean-up of toxic wastes at a Superfund site. The sections begins: "No Federal court shall have jurisdiction under Federal law...." No language could be plainer.

Id. at 1020; see also id. at 1023 ("CERCLA's timing of review procedures, as established in § [9613(h)], clearly

_____

3. Plaintiffs also alleged that the Drake Chemical site remediation activities violated NEPA and that the district court had jurisdiction over the NEPA claims under 28 U.S.C. § 1331. They do not challenge on appeal the district court's conclusion that it lacked jurisdiction over the NEPA claims.

15

preclude jurisdiction to delay or interfere with EPA clean-up activities even if those activities could irreparably harm the archaeological or historical resources on Boarhead Farm."). Plaintiffs argue that Boarhead Corp. does not govern this case because it did not involve a RCRA suit. They urge this court to adopt the rationale of United States v. Colorado, 990 F.2d 1565 (10th Cir. 1993), which they argue permits the prosecution of their RCRA claims despite the pendency of EPA's CERCLA remedial action.

Plaintiffs are correct that the precise holding of Boarhead Corp. was that the district court lacked jurisdiction to entertain a suit challenging CERCLA clean-up activities as inconsistent with the requirements imposed by NHPA, not RCRA. However, it is clear that the court's decision turned not on a finding that § 9613(h) specifically precluded NHPA suits, but on its conclusion that § 9613(h) precludes the federal courts from exercising jurisdiction over any challenge to a CERCLA action based on a violation of any other federal law:

[O]ur resolution of this appeal depends upon the inability of the district court to entertain an action under the Preservation Act because § [9613(h)] of CERCLA deprives it of the power to hear claims under the Preservation Act, or any other statute, that would interfere with EPA's clean-up activities on a Superfund site.

923 F.2d at 1024 (emphasis added); see also id. at 1013-14 ("The plain language of CERCLA § [9613(h)] shows that Congress intended to deny the district courts jurisdiction to hear complaints challenging the EPA's Superfund clean-up or pre-clean-up activities, even if a statute other then CERCLA ordinarily would create a federal claim.") (emphasis added). Thus, even though Boarhead Corp. did not precisely address the question at issue here, its reasoning is clearly applicable.4 Indeed, the case has been

_____

4. Our conclusion that the reasoning of Boarhead Corp. applies to RCRA suits challenging CERCLA clean-up activities is buttressed by RCRA § 6972(b)(2)(B), which provides:

No action may be commenced under subsection (a)(1)(B) of this section if the Administrator, in order to restrain or abate acts or

16

relied on by other courts of appeals to support the conclusion that RCRA-based suits challenging CERCLA activities are precluded under § 9613(h). See, e.g., McClellan Ecological Seepage Situation v. Perry, 47 F.3d 325, 329 (9th Cir. 1995); Arkansas Peace Center v. Arkansas Dep't of Pollution Control & Ecology, 999 F.2d 1212, 1217 (8th Cir. 1993). Accordingly, the district court is precluded under § 9613(h) from exercising subject matter jurisdiction over plaintiffs' RCRA claims.5

_____

conditions which may have contributed or are contributing to the activities which may present the alleged endangerment-- ...

 (ii) is actually engaging in a removal action under section [9604] of [CERCLA] ....

This provision indicates that Congress intended to preclude interference with CERCLA cleanup activities by actions predicated on RCRA violations. Although plaintiffs argue that the provision is not directly applicable here because the hazard they allege is the trial burn/incineration itself, not the hazardous waste disposal that prompted the Superfund action, the provision is still relevant as an indication of Congress's intent that RCRA actions not interfere with CERCLA remediations.

5. Even if we did not find Boarhead Corp. controlling and looked to the case law of other circuits, United States v. Colorado, 990 F.2d 1565 (10th Cir. 1993), would not support the plaintiffs' position. The Colorado case involved efforts by the Colorado Department of Health to enforce the state's EPA-authorized RCRA equivalent, the Colorado Hazardous Waste Management Act (CHWMA), in connection with a hazardous waste treatment and disposal facility at which EPA and the Army were conducting a CERCLA remediation. In holding that the district court had jurisdiction to enforce Colorado's CHWMA, the Tenth Circuit acknowledged that § 9613(h) bars federal courts from exercising jurisdiction over a challenge to a CERCLA remedial action under any federal law. Id. at 1577. However, the court held that § 9613(h) does not bar jurisdiction over a suit to enforce RCRA regulations where the suit does not "challenge" the CERCLA remedy. In the case before it, the court found that Colorado's enforcement action was not a "challenge" to EPA/Army's CERCLA remedy because it did not seek to halt or delay the remedy, but merely to compel the Army to comply with CHWMA regulations during the course of the remediation. Id. at 1576. The court explicitly distinguished Boarhead Corp. on the ground, inter alia, that the Boarhead plaintiff, who sought to stay a CERCLA remedial action, clearly was "challenging" the CERCLA action. Id. at 1577. Likewise, plaintiffs here, who seek an order that EPA "immediately and permanently cease incineration at the Drake Chemical NPL site," App. at 17, clearly are "challenging" EPA's CERCLA remedial action at the Drake Chemical site.

17

D.

Finally, plaintiffs contend that even if the district court lacks jurisdiction over their suit under both CERCLA and RCRA, it has inherent jurisdiction to review EPA's action at the Drake Chemical site under the doctrine of Leedom v. Kyne, 358 U.S. 184 (1958). Plaintiffs characterize that doctrine as authorizing judicial review of any agency action allegedly conducted in excess of agency authority or in violation of a clear statutory prohibition. In Kyne, a professional association petitioned the National Labor Relations Board (NLRB) for certification as the exclusive collective bargaining agent of nonsupervisory professional employees at a plant. A competing labor organization sought to intervene and include certain technical employees in the bargaining unit. The NLRB found that the technical employees were not professional employees, but nonetheless decided that nine of them should be included in the bargaining unit. The association asked the NLRB to take a vote of the professional employees pursuant to § 9(b)(1) of the National Labor Relations Act (NLRA). That section provides that the NLRB "shall not ... decide that any unit is appropriate for [collective bargaining] purposes if such unit includes both professional employees and employees who are not professional employees unless a majority of such professional employees vote for inclusion in such unit." 29 U.S.C. § 159(b)(1). The NLRB refused to hold the vote, included the nonprofessional employees in the bargaining unit, and directed a bargaining unit election.

Following the election and certification of a bargaining representative, the association filed suit to have the decision, election, and certification vacated on the ground that the NLRB's decision to include the nonprofessional employees was made in excess of its authority. The Supreme Court held that the district court had jurisdiction to entertain the suit. Even though the decision to certify the unit was not a "final order" ordinarily reviewable under the NLRA, the Court allowed the suit to proceed because the suit sought vacatur of an order made in excess of the NLRB's authority and contrary to a specific "clear and mandatory" prohibition in the NLRA. Id. at 188. The Court inferred from Congress's creation of an express statutory

18

"right" of professional employees not to be included in a bargaining unit with nonprofessional employees without their consent that Congress intended the right to be enforceable under the general jurisdiction of the district courts. Id. at 190.

Subsequent cases have refined the Kyne doctrine. In Briscoe v. Bell, 432 U.S. 404 (1977), the Court held that jurisdiction to review agency action allegedly in excess of statutory authority cannot be inferred when language in the statute itself expressly forecloses judicial review. In Briscoe, Texas sued the United States Attorney General to challenge his determination that Texas was covered by the Voting Rights Act (VRA). The Supreme Court held that the district court lacked jurisdiction to address Texas's challenge to the Attorney General's determination. Although Texas alleged that the Attorney General had exceeded his authority in calculating the applicability of the VRA, the Court held that review of the determination was expressly precluded by § 4(b) of the VRA, which provides that "a determination or certification of the Attorney General or of the Director of the Census under this section ... shall not be reviewable in any court ...." 42 U.S.C. § 1973b(b). The Court found that complete preclusion of review was consistent with Congress's intention to "eradicate the blight of voting discrimination with all possible speed" by preventing judicial delays in implementation of the VRA. 432 U.S. at 410.

More recently, in Board of Governors v. MCorp Financial, Inc., 502 U.S. 32 (1991), the Court reiterated that a right to judicial review under Kyne may be inferred only if there is no clear statutory prohibition of such review. In MCorp, a bank holding company sought to enjoin administrative proceedings instituted against it by the Federal Reserve Board on the ground that the proceedings were in excess of the Board's authority. The Federal Institutions Supervisory Act (FISA) authorizes the Board to institute administrative proceedings against bank holding companies. Although FISA includes a comprehensive regime of judicial review of Board orders, it also provides that "except as otherwise provided in this section no court shall have jurisdiction to affect by injunction or otherwise the issuance or

19

enforcement of any notice or order under this section, or to review, modify, suspend, terminate, or set aside any such notice or order." 12 U.S.C. § 1818(i)(1). The Court recognized that "Kyne stands for the familiar proposition that `only upon a showing of "clear and convincing evidence" of a contrary legislative intent should the courts restrict access to judicial review,' " 502 U.S. at 44 (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 141 (1967)). It nevertheless found in FISA the "clear and convincing evidence that Congress intended to deny the District Court jurisdiction to review and enjoin the Board's ongoing administrative proceeding." Id. Thus, the district court had no jurisdiction to entertain the holding company's suit.

Section 9613(h) provides "clear and convincing evidence," akin to that present in MCorp, that Congress intended to deny the district court jurisdiction to review EPA's ongoing remedial action. Such denial of judicial review is consistent with Congress's intention to permit EPA to eradicate environmental damage "with all possible speed" by preventing judicial delays in the implementation of remedial actions. See Briscoe, 432 U.S. at 410. Accordingly, we hold that the Kyne doctrine does not confer federal court jurisdiction over plaintiffs' suit.

III.

In accordance with the foregoing, we conclude that the district court lacked subject matter jurisdiction over plaintiffs' suit to stop the Drake Chemical site incineration remedy, and we will affirm the dismissal of the complaint.

A True Copy:
Teste:

Clerk of the United States Court of Appeals
for the Third Circuit

20