THE CHAMBER OF GREATER BA-
TON ROUGE, the West Baton Rouge
Chamber of Commerce, Iberville Par-
ish Chamber of Commerce, the Loui-
siana Oil Marketers and Convenience
Store Association, Couhig Southern
Environmental Services of Baton
Rouge, Inc., and Lovie Robinson
Hammet

v.

THE UNITED STATES ENVIRON-
MENTAL PROTECTION AGENCY,
Michael Leavitt, in his capacity as
Administrator, and Richard E.
Greene, in his capacity as Administra-
tor of EPA Region 6

No. CIV.A. 04–323–A.

United States District Court,
M.D. Louisiana.

June 18, 2004.

Francis S. "Frank" Craig, III, Joell M.
Keller, Breazeale, Sachse & Wilson, Ste-
ven Jay Levine, Patrick O'Hara, Phelps
Dunbar, LLP, Baton Rouge, LA, for Plain-
tiffs.

David R. Dugas, United States Attorney, John Joseph Guapp, Assistant United States Attorney, Baton Rouge, LA, Thomas L. Sansonetti, Assistant Attorney General, Environmental and Natural Resources Division, U.S. Department of Justice, Eric G. Hostetler, Jessica O'Donnell, Environmental Defense Section, Of Counsel: Roland C. Dubois, Jan M. Tierney, U.S. Environmental Protection Agency, Office of General Counsel, Washington, D.C., for Defendants.

## RULING ON SUBJECT MATTER JURISDICTION

JOHN V. PARKER, District Judge.

The court, as it is required to do, has raised *sua sponte* the issue of whether the court has subject matter jurisdiction to hear this case. The issue has been thoroughly briefed by the parties, and oral argument is not necessary. Jurisdiction is alleged to be based on 28 U.S.C. § 1331, the Clean Air Act, and the Declaratory Judgment Act.

The court has raised the issue of subject matter jurisdiction on its own because such jurisdiction involves the power or authority of a court to deal with the general subject involved in the action. A juridical fact ofttimes overlooked, even by lawyers, and generally unknown by the general public, is that federal district courts are courts of limited subject matter jurisdiction. That is so because the Constitution says so. Article III, Section 1, provides that, "The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish."

The district courts are among the "inferior Courts" that Section 1 empowers the Congress to create, and those courts have only such jurisdiction as the Congress may bestow. Thus, the first hurdle to confront every litigant who files an action in a federal district court is: Upon what congressional authority do you base your case? An unsatisfactory answer to that question results in dismissal of the action for want of jurisdiction.

When a litigant attempts to initiate an action in federal district court against the United States, a second and related hurdle appears: Is there a congressional waiver of the sovereign immunity of the United States? Sovereign immunity is a jurisdictional bar which precludes bringing suit against the government without its consent. Stated simply, the United States as sovereign is immune from suit except and only upon such terms as it consents to be sued. *Hercules, Inc. v. United States*, 516 U.S. 417, 422, 116 S.Ct. 981, 985, 134 L.Ed.2d 47 (1996). Without the consent of the Congress, the action must be dismissed for want of jurisdiction. The commentators explain sovereign immunity.

> The natural consequence of the sovereign immunity principle is that the absence of consent by the United States is a fundamental defect that deprives the district court of subject matter jurisdiction.

> \* \* \* \* \* \*

> The government will be held to have consented to be sued only if a statute's text contains an unequivocally clear statement of a waiver of sovereign immunity.

> \* \* \* \* \* \*

> Moreover, if Congress in fact has enacted legislation consenting to the bringing of a particular kind of suit against the government, ... it may define the terms and conditions under which it is willing to allow the United States to be sued and the general rule long has been that the government's consent to suit is to be strictly interpreted according to the pre-

cise terms of the statute waiving the sovereign immunity.

Wright, Miller, & Cooper, Federal Practice and Procedure: Jurisdiction 3d § 3654. (footnotes omitted).

For reasons more fully explained below, the present action against the United States Environmental Protection Agency (EPA) fails to clear these two hurdles.

## FACTUAL BACKGROUND

This case arises out of the Baton Rouge area's designation by EPA pursuant to the Clean Air Act (CAA), 42 U.S.C. § 7407(d), as a nonattainment area for ozone, which was originally done in 1991. This designation meant that the Baton Rouge area (consisting of East Baton Rouge, West Baton Rouge, Ascension, Iberville, and Livingston Parishes) failed to meet the National Ambient Air Quality Standards (NAAQS) that were established for ozone. 42 U.S.C. § 7511(a)(1). At that time, Baton Rouge was classified as a "serious" nonattainment area for ozone. The classification was based on the one-hour standard, which involves measurements averaged over intervals of one hour.

Under the provisions of the CAA, Baton Rouge had until November 15, 1999 to achieve attainment of the one-hour ozone NAAQS. EPA was directed by the CAA to determine the attainment status of each ozone nonattainment area within six months after the scheduled attainment date. 42 U.S.C. § 7511(b)(2)(A). If EPA made the determination that an area had not achieved attainment of the NAAQS by the required date, then the area was reclassified by operation of law to a higher classification and given a new attainment date and additional air quality regulations. The CAA also directed EPA to publish notice in the Federal Register, within six months of the scheduled attainment date, identifying the areas that it had determined had failed to achieve attainment and identifying the new classification. 42 U.S.C. § 7511(b)(2)(B).

EPA made the determination that Baton Rouge had not achieved the one-hour NAAQS for ozone and published it in a rule in the Federal Register on April 24, 2003. As stated in the Federal Register, Baton Rouge was reclassified by operation of law as a "severe" nonattainment area and additional requirements became applicable to the area, including the requirement that only reformulated gasoline (RFG) be sold in the area. The CAA mandates that only RFG be sold in "covered areas" of the country, and the definition of "covered areas" includes any areas that were reclassified as a "severe" ozone nonattainment area by EPA. Pursuant to the CAA, Baton Rouge becomes a "covered area" on June 23, 2004, one year after the effective date of its reclassification to a "severe" ozone nonattainment area. 42 U.S.C. § 7545(k)(10)(D).

On April 30, 2004, EPA published a rule in the Federal Register containing air quality designations and classifications for areas throughout the United States based on new eight-hour NAAQS. The new eight-hour standard is more stringent and involves measurements averaged over eight hours. EPA designated Baton Rouge as a nonattainment area with respect to the eight-hour standard and classified Baton Rouge as a "marginal" nonattainment area with respect to the eight-hour standard.

## LAW AND ANALYSIS

The plaintiffs have filed this action against EPA and its administrators for an injunction and declaratory judgment. Their main concern is the RFG requirement which goes into effect on June 23, 2004. They argue that EPA's classification of Baton Rouge as "marginal" under the new eight-hour standard means that

Baton Rouge is not a "covered area" as defined by the CAA and not subject to the RFG requirement. In their complaint, the plaintiffs claim they are challenging interpretations of the CAA and the implementing regulations advanced or adopted by defendants EPA, Leavitt and Greene, and they seek to enjoin the defendants from any actions based on their interpretations of the CAA and the implementing regulations.

The plaintiffs have alleged in their complaint that this court's jurisdiction is based on 28 U.S.C. § 1331, which states, "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." The federal district courts are authorized to hear only those cases in which the plaintiff's well-pleaded complaint "establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Board of State of California v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 27–8, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). The federal law at issue in this case is the CAA, and the plaintiffs assert that resolution of the case depends on substantial questions of federal law under the CAA, thus giving the court jurisdiction.

The Congress has waived sovereign immunity on many occasions and upon many different terms. The CAA contains a waiver of sovereign immunity but only in accord with the specific provisions of that statute. Essentially, the Act authorizes judicial review of "final actions" of the agency, but only under prescribed circumstances and only in designated courts, which does not include the district courts.

The Act contains a provision on judicial review which grants to the circuit courts of appeals (which also are among the "inferi-or Courts") jurisdiction of any petition seeking review of final actions taken by EPA. Such a provision vests original subject matter jurisdiction of such actions only in the courts of appeals, thus precluding them from being brought in the district courts. The waiver/judicial review section of the Act provides as follows:

(b) Judicial review

(1) A petition for review of action of the Administrator in promulgating any national primary or secondary ambient air quality standard, any emission standard or requirement under section 7412 of this title, any standard of performance or requirement under section 7411 of this title, any standard under section 7521 of this title (other than a standard required to be prescribed under section 7521(b)(1) of this title), any determination under section 7521(b)(5) of this title, any control or prohibition under section 7545 of this title, any standard under section 7571 of this title, any rule issued under section 7413, 7419, or under section 7420 of this title, or any other nationally applicable regulations promulgated, or final action taken, by the Administrator under this chapter may be filed only in the United States Court of Appeals for the District of Columbia. A petition for review of the Administrator's action in approving or promulgating any implementation plan under section 7410 of this title or section 7411(d) of this title, any order under section 7411(j) of this title, under section 7412 of this title, under section 7419 of this title, or under section 7420 of this title, or his action under section 1857c–10(c)(2)(A), (B), or (C) of this title (as in effect before August 7, 1977) or under regulations thereunder, or revising regulations for enhanced monitoring and compliance certification programs under section 7414(a)(3) of this title, or any other final action of the Administra-

tor under this chapter (including any denial or disapproval by the Administrator under subchapter I of this chapter) which is locally or regionally applicable may be filed only in the United States Court of Appeals for the appropriate circuit. Notwithstanding the preceding sentence a petition for review of any action referred to in such sentence may be filed only in the United States Court of Appeals for the District of Columbia if such action is based on a determination of nationwide scope or effect and if in taking such action the Administrator finds and publishes that such action is based on such a determination.

\* \* \* \* \* \*

(2) Action of the Administrator with respect to which review could have been obtained under paragraph (1) shall not be subject to judicial review in civil or criminal proceedings for enforcement.

42 U.S.C. § 7607(b).

The plaintiffs, being fully aware of that provision of the law, seek to avoid its application by suggesting that they do not here seek review of "final action" by the EPA. They argue that they do not seek review of any final action taken by EPA, and thus, § 7607(b) does not apply, and this court has original subject matter jurisdiction of their claim under 28 U.S.C. § 1331. They claim that they do not contest the validity of the rule issued by EPA on April 24, 2003, reclassifying Baton Rouge as a "severe" nonattainment area for ozone, nor do they contest the validity of the rule issued on April 30, 2004, classifying Baton Rouge as "marginal" under the new eight-hour NAAQS. They claim that they are seeking, in the form of a declaratory judgment, an interpretation of a federal law, the CAA, and, more specifically, a determination of whether Baton Rouge will be a "covered area" on June 23, 2004 for purposes of 42 U.S.C. § 7545(k) such that the RFG requirement applies.

According to the plaintiffs, such statutory interpretation fails within the court's general federal question jurisdiction and is not barred by § 7607.

 No matter how artfully the plaintiffs phrase it, what is actually at issue here is a final action of the EPA Administrator. The plaintiffs' reason for filing their complaint is the RFG requirement (as well as other requirements) that will go into effect on June 23, 2004, and the reason RFG will be required on that date is that EPA by rule reclassified the Baton Rouge area as "severe" and, because of that "final action," Baton Rouge will become a "covered area" under § 7545(k)(10)(D). Baton Rouge is only considered a "covered area" as that term is defined in the statute because EPA has made the final determination, published in its rule in the Federal Register on April 24, 2003, that Baton Rouge did not attain the one-hour ozone NAAQS and that it would be reclassified from a serious to a severe ozone nonattainment area by operation of law on the effective date of the rule (June 23, 2003). That finding or determination by EPA is what caused the RFG requirement to become applicable and it is what ultimately is at issue in this case. That finding is a final action by the EPA Administrator subject to the judicial review provisions of § 7607. The plaintiffs claim that they are not seeking review of that finding and they do not contest its validity, but an examination of their complaint shows otherwise.

The complaint states that this is "a civil action challenging interpretations of the CAA and the implementing regulations advanced or adopted by EPA, Leavitt, and Greene." The plaintiffs state that they seek "to enjoin the Defendants from actions based on their interpretations of the CAA and the implementing regulations." These statements are direct challenges to

regulations adopted by EPA and the Administrator, actions which are clearly final actions. The complaint itself refers to the action taken by EPA on April 24, 2003 as "rulemaking" (see e.g. par. 49, 50) and states that in the rule EPA reclassified Baton Rouge as a severe nonattainment area for ozone. The plaintiffs then state that, "Based solely on EPA's classification of Baton Rouge as a severe area for purposes of the 1 hour NAAQS, as of June 23, 2004, EPA's interpretation of the CAA is that it will be illegal for any person to sell any conventional fuel in the Baton Rouge area." (complaint, par. 56). The plaintiffs admit that it is the action of EPA in its April 24, 2003 rulemaking that has caused the RFG requirement to go into effect in Baton Rouge. In another paragraph of their complaint, the plaintiffs state, "The Baton Rouge area is properly classified as marginal, yet it is subject to "severe" requirements. The imposition of severe requirements to a marginal area is contrary to law." (par. 130). This is essentially an allegation that Baton Rouge's classification as "severe" is improper, which is a direct challenge to a final determination by EPA, whether the plaintiffs admit it or not.

The above examples taken from the plaintiffs' complaint highlight the nature of the plaintiffs' claim. Taking the complaint in its entirety, the court concludes that the plaintiffs are seeking judicial review of a final action taken by the Administrator, and under 42 U.S.C. § 7607, the Congress has not granted any district court the authority to entertain this dispute.

■ In an attempt to avoid the effect of § 7607, the plaintiffs have argued that the Declaratory Judgment Act (DJA) extends the range of available remedies and thus allows them to maintain this action in the district court. That statute does not expand the court's jurisdiction, but it does enlarge the range of remedies available to plaintiffs in federal courts by enabling a party to precipitate a lawsuit in order to avoid multiple liability or other inconvenience. *Bell & Beckwith v. United States of America, Internal Revenue Service,* 766 F.2d 910, 914 (6th Cir.1985). In declaratory judgment actions, "federal question jurisdiction exists if it would exist in a coercive action by the defendant." *Bell & Beckwith,* 766 F.2d at 913. The plaintiffs argue that, because the EPA may bring a coercive action in district court under 42 U.S.C. § 7545 against them to restrain violations of the RFG requirement and to collect civil penalties for violations, federal question jurisdiction exists over the instant declaratory judgment action in district court.

The problem with that argument is that it overlooks a specific statutory provision of the CAA, 42 U.S.C. § 7607(b)(2), which provides that a final action of the Administrator shall not be subject to judicial review in civil or criminal proceedings for enforcement. Therefore, by virtue of the structure of the CAA, the plaintiffs would not be entitled to challenge the Administrator's classification of Baton Rouge as severe in an enforcement proceeding brought by EPA. This does not deprive the plaintiffs of a forum for their lawsuit; the forum, however, is not this court. The plaintiffs must file a petition with a different court for judicial review of a final action of the Administrator. The DJA cannot extend this court's jurisdiction.

■ Furthermore, even if the court were to accept the plaintiffs' argument that federal question jurisdiction exists separate and apart from § 7607, the court finds that there has been no express waiver of the sovereign immunity of the United States. When a plaintiff seeks to sue the United States or an instrumentality or agency thereof, he may not rely on the general federal question jurisdiction of 28 U.S.C. § 1331, but instead must identify a

specific statutory provision that waives the government's sovereign immunity from suit. *Clinton County Com'rs v. United States Environmental Protection Agency,* 116 F.3d 1018, 1021 (3d Cir.1997), cert. denied, *Arrest the Incinerator Remediation (A.I.R.), Inc. v. Environmental Protection Agency,* 522 U.S. 1045, 118 S.Ct. 687, 139 L.Ed.2d 633 (1998); see *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). A waiver of sovereign immunity must be unequivocally expressed and is strictly construed in favor of the sovereign. *Clinton County Com'rs,* 116 F.3d at 1021.

The plaintiffs have pointed to no provisions that waive the sovereign immunity of the United States, except as noted above in the CAA. They point to the fact that EPA may file a suit in district court under § 7545 to restrain violations of the RFG requirement and to impose penalties, and they seem to imply either that counterclaims could then be brought against EPA or that non-governmental entities, such as the plaintiffs, could bring suit against EPA under this provision in order to enjoin imposition of the RFG requirement. There is no authority for the latter proposition, and as discussed above, under § 7607(b)(2), final action of the Administrator is not subject to judicial review in civil or criminal proceedings for enforcement. In any event, there has been no express waiver of the government's sovereign immunity.

## CONCLUSION

For the foregoing reasons, this action shall be hereby **DISMISSED** for lack of subject matter jurisdiction.