# UNITED STATES COURT OF APPEALS
## Tenth Circuit
### Byron White United States Courthouse
### 1823 Stout Street
### Denver, Colorado 80294
### (303) 844-3157

Patrick J.  Fisher, Jr.                                                                    Elisabeth A. Shumaker
Clerk                                                                                      Chief Deputy Clerk

December 19, 1996


**TO:** ALL RECIPIENTS OF THE CAPTIONED OPINION

**RE:** 96-1091, U.S. v. City & County of Denver
November 18, 1996


Please be advised of the following correction to the captioned decision:

On the cover page, the parties represented by attorneys should have been switched, and the names of the Environmental Protection Agency attorneys have been added.

Attached is the corrected version of the cover page.

Very truly yours,

Patrick Fisher, Clerk



Susie Tidwell
Deputy Clerk

UNITED STATES COURT OF APPEALS

**Filed 11/18/96**

TENTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff-Counter-Defendant-<br>    Appellee,<br>vs.<br><br>DENVER, CITY AND COUNTY OF;<br>DOROTHY A. NEPA, in her official<br>capacity as Administrator of the<br>Department of Zoning Administration of<br>the City and County of Denver,<br><br>    Defendants-Counter-Claimants-<br>    Appellants. | No. 96-1091 |

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 94-D-2004)

T. Shaun Sullivan, Assistant City Attorney (Daniel E. Muse, City Attorney, Robert M. Kelly and Thomas Bigler, Assistant City Attorneys, with him on the brief), Denver, Colorado for Defendants-Counter-Claimants-Appellants.

Daniel W. Pinkston, Attorney, U.S. Department of Justice, Environment and Natural Resources Division, Washington, D.C. (Lois J. Schiffer, Assistant Attorney General, Washington, D.C., Henry L. Solano, U.S. Attorney and Linda A. Surbaugh, Assistant U.S. Attorney, Denver, Colorado, Martin W. Matzen and Elinor Colbourn, Attorneys, U.S. Department of Justice, Environmental and Natural Resources Division, Washington, D.C., George Wyeth, Attorney, U.S. Environmental Protection Agency, Washington, D.C., and Wendy I. Silver, Attorney, U.S. Environmental Protection Agency, Denver, Colorado, with him on the brief), for Plaintiff-Counter-Defendant-Appellee.

Before EBEL, KELLY and BRISCOE, Circuit Judges.

KELLY, Circuit Judge.

Defendant-Appellant City and County of Denver appeals from a grant of summary judgment in favor of Plaintiff-Appellee United States on the United States' declaratory judgment action. The district court granted summary judgment on the grounds that Denver's zoning ordinance is preempted by the Comprehensive Environmental Responses, Compensation, and Liability Act of 1980 (CERCLA), Pub. L. No. 96-510, 94 Stat. 2767 (codified as amended at 42 U.S.C. §§ 9601-9675). Our jurisdiction arises under 28 U.S.C. § 1291. We affirm.

## Background

Congress enacted CERCLA to provide a mechanism for the prompt and efficient cleanup of hazardous waste sites. See United States v. Akzo Coatings of Am., 949 F.2d 1409, 1417 (6th Cir. 1991). The Act authorizes the EPA to issue orders requiring potentially responsible parties to clean up hazardous waste sites. 42 U.S.C. § 9606(a). The EPA also may conduct its own cleanup, and then seek contribution from potentially responsible parties, which includes current and past owners of the site, as well as the owners and transporters of the waste held at the site. 42 U.S.C. §§ 9604, 9607(a). Section 9621 of CERCLA establishes the cleanup standards that must be met, including

all applicable or relevant and appropriate requirements of federal and state environmental laws.

Waste sites subject to CERCLA include virtually any place where hazardous substances are located. Any site listed on the National Priorities List under CERCLA § 9605(a)(8)(B), is subject to EPA-funded cleanup activity. These EPA cleanups are financed by the Superfund, an $8.5 billion fund created by EPA taxes and fees. See 26 U.S.C. § 9507.

The core of the CERCLA cleanup program is the National Contingency Plan, 40 C.F.R. Part 300 (1995), which specifies the roles of the federal and state governments in responding to hazardous waste sites, and establishes the procedures for making cleanup decisions. The Plan provides that once a hazardous waste site is identified, it should be evaluated to determine whether a remedial action is required. This evaluation involves an intensive remedial investigation/feasibility study, which identifies the possible remedial alternatives. On the basis of that study, the EPA proposes the selected remedy, after which there follows a period for public comment. The cleanup plan is then finalized, and the EPA's remedy decision is documented in a record of decision.

The Denver Radium Superfund Site is divided into eleven operable units comprising over forty locations which were contaminated by radioactive waste in the early 1900s. In 1983, the EPA placed the Denver Radium Superfund Site on the National Priorities List of the country's most contaminated sites. This designation prompted a long

series of studies, public meetings, formal decisions and environmental cleanups pursuant to CERCLA and the National Contingency Plan. By September 1987, records of decision had been issued for ten of the eleven operable units. Each decision primarily identified excavation, removal and replacement of the contaminated soil as the proper cleanup remedy.

In December 1990, the EPA and Colorado Department of Health (CDH) made available for public comment a draft of the remedial investigation/feasibility study for OU-VIII, the last operable unit to be considered. The site consists of three parcels, the largest of which is owned by the S.W. Shattuck Chemical Company. It is the only operable unit at the Denver Superfund Site for which private, as opposed to government, parties are responsible.

On March 29, 1991, the EPA and CDH issued for public comment a proposed remediation plan for OU-VIII that identified excavation and replacement as the preferred alternative, but specifically encouraged comment on all seven of the available alternatives, noting that the preferred alternative could be modified. On January 28, 1992, the EPA and CDH issued the record of decision for the site indicating that the preferred alternative was now on-site solidification of contaminated soils on the Shattuck parcel. The decision considered the comments submitted by various parties, including Denver, and was accompanied by detailed responses to the comments. Denver strongly

supported excavation and replacement, but none of Denver's comments claimed that on-site remediation would violate its zoning ordinances.

Pursuant to CERCLA § 9606(a), the EPA issued a remedial order effective August 31, 1992, requiring Shattuck to perform the on-site remedy for OU-VIII. Shattuck is subject to civil penalties--and possibly punitive damages--for willful violation of or failure to comply with the EPA Order. See 42 U.S.C. §§ 9607(c)(3), 9612(c). Shattuck agreed to comply with the order and began to do so. On May 11, 1994, Denver issued a cease and desist order to Shattuck based on asserted violations of Denver zoning ordinances, which prohibit the maintenance of hazardous waste in areas zoned for industrial use. On June 10, 1994, Shattuck filed an appeal of the order with the Denver Board of Adjustment for Zoning Appeals. The Board upheld the cease and desist order on November 15, 1994. The United States was not a party to those proceedings.

After the Board decision, representatives of the United States and Denver met to attempt to resolve the issues. These negotiations failed, and the United States filed the complaint in this case seeking a declaratory judgment that the cease and desist order is void and unenforceable. On February 22, 1996, the district court entered an order granting the United States' motion for summary judgment, denying Denver's cross-motion for summary judgment, and enjoining Denver from enforcing its zoning ordinance against Shattuck. This appeal followed.

Discussion

We review the grant of summary judgment de novo, and apply the same legal standard used by the district court under Rule 56(c). Goldsmith v. Learjet, Inc., 90 F.3d 1490, 1493 (10th Cir. 1996). Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We construe the factual record and reasonable inferences therefrom in the light most favorable to the nonmovant. Gullickson v. Southwest Airlines Pilots' Ass'n, 87 F.3d 1176, 1183 (10th Cir. 1996).

## I. Conflict Preemption

The Supremacy Clause of the Constitution, art. VI, § 2, invalidates state laws that "interfere with, or are contrary to the laws of [C]ongress, made in pursuance of the [C]onstitution." Wisconsin Pub. Intervenor v. Mortier, 501 U.S. 597, 604 (1991) (quoting Gibbons v. Ogden, 22 U.S. (9 Wheat) 1, 211 (1824)). Federal law preempts state law explicitly if the language of the federal statute reveals an express congressional intent to do so. Barnett Bank of Marion County v. Nelson, 116 S. Ct. 1103, 1107-08 (1996). In the absence of such language, the state's law may still be preempted implicitly, in either of two ways. "Field preemption" occurs where the federal scheme of regulation is so pervasive that Congress must have intended to leave no room for the States to supplement it. Id. at 1108. "Conflict preemption" occurs where it is impossible to

comply with both the federal and state laws, or the state law stands as an obstacle to the accomplishment of Congress's objectives.  Id.

This is a case of conflict preemption.  Denver concedes that it is impossible for Shattuck to comply with both Denver's zoning ordinance and the EPA's remedial order.  This zoning ordinance also stands as an obstacle to the objectives of CERCLA, whose purpose is to effect the expeditious and permanent cleanup of hazardous waste sites, and to allow the EPA the flexibility needed to address site-specific problems.  CERCLA § 9621(b)(1) (expressing a preference for on-site, permanent remedies); H.R. Rep. No. 99-253(I), 99th Cong., 2d Sess., at 58, reprinted in 1986 U.S.C.C.A.N. 2835, 2840 (stating that the EPA should select efficient and permanent cleanups when possible); id. at 2839 (stating that the 1986 amendments to CERCLA were designed in part to leave the EPA sufficient flexibility to address site-specific problems).  A zoning ordinance which bars the maintenance of hazardous waste dramatically restricts the range of options available to the EPA, and in this case the ordinance would prevent a permanent on-site remedy.  We agree with the district court that Denver's zoning ordinance is in actual conflict with the EPA's remedial order.

Denver contends, however, that Congress did not intend to preempt local zoning ordinances.  Relying on Cipollone v. Ligget Group, Inc., 112 S. Ct. 2608 (1992), Denver argues that because CERCLA contains only a single express preemption provision--

§ 9621(e)(1),[1] which preempts state or local permit requirements--Congress did not intend to preempt state or local substantive law. Essentially, Denver argues that implied preemption cannot exist when Congress has included an express preemption clause in the statute.

Denver's reliance on Cipollone is misplaced. The Supreme Court has held in Freightliner Corp. v. Myrick, 115 S. Ct. 1483, 1488 (1995), that an express preemption provision does not necessarily preclude an implied preemption analysis. See also Montag v. Honda Motor Co., 75 F.3d 1414, 1417 (10th Cir.), cert. denied, 65 U.S.L.W. 3248 (U.S. Oct. 7, 1996) (No. 95-1885) (citing Myrick and addressing implied preemption despite express preemption clause). Instead, Cipollone holds that implied preemption is precluded by an express preemption clause only when that clause provides a "reliable indicium of congressional intent with respect to state authority." 112 S. Ct. at 2618 (quoting Malone v. White Motor Corp., 435 U.S. 497, 505 (1978)). In this case, the district court held that the express preemption provision contained in § 9621(e)(1) is not a sufficiently "reliable indicium" of Congress's intent. We agree. In our view, to hold that Congress intended that non-uniform and potentially conflicting zoning laws could override CERCLA remedies would fly in the face of Congress's goal of effecting prompt cleanups of the literally thousands of hazardous waste sites across the country. We would

---

[1] Section 9621(e)(1) of CERCLA provides that "[n]o Federal, State, or local permit shall be required for the portion of any removal or remedial action conducted entirely onsite, where such remedial action is selected and carried out in compliance with this section."

need especially reliable indications of an intent so contrary to the overall objectives of CERCLA, and we do not find any in either CERCLA or its legislative history.

For the same reasons, we reject Denver's argument that its zoning ordinances constitute "a state environmental or facility siting law" and thus fall within the definition of "applicable or relevant and appropriate requirements"of state law, with which the EPA must comply if the state requirements are more stringent than federal law. See 42 U.S.C. § 9621(d)(2)(A)(ii). Denver argues that Wisconsin Pub. Intervenor v. Mortier, 111 S. Ct. 2476 (1991), supports its contention. Mortier held that the use of the term "state" in § 136v of the Federal Insecticide, Fungicide and Rodenticide Act (FIFRA), 7 U.S.C. §§ 136-136y, included "political subdivisions" of the state. However, neither FIFRA nor its legislative history reflect the same urgent need for large-scale prompt and efficient remediation activity, essential to public health, that is reflected in CERCLA. See CERCLA § 9613(h) (precluding judicial review of the EPA's remedial order until after the EPA's remedy has been completed). We will not apply Mortier in this context when to do so would produce a result so contrary to the overall objectives of CERCLA as expressed consistently in the Act itself, as well as in the legislative history, which is "sufficiently specific, clear and uniform to be a reliable indicator of intent," Miller v. Commissioner, 836 F.2d 1274, 1282 (10th Cir. 1988). If Congress had wished to include local zoning ordinances within the definition of "state law" it would surely have so stated. See, e.g., RCRA, 42 U.S.C. § 6929 (referring to "State or political subdivision").

## II.  The § 9613(h) Jurisdictional Bar

Denver also makes two arguments to defeat the EPA's chosen remedy.  First, Denver argues that the remedy chosen by the EPA does not comply with the requirements of CERCLA § 9621.  Second, Denver contends that where two remedies are available to the EPA, it should choose the remedy that complies with both CERCLA and local law.  We conclude that addressing these arguments would require us to examine EPA's remedial action, which we are without jurisdiction to review pursuant to CERCLA § 9613(h).

Section 9613(h) provides that no federal court shall have jurisdiction to review any challenges to removal or remedial action selected by the EPA under §§ 9604 or 9606(a).  There are five exceptions to this jurisdictional bar, none of which Denver claims is applicable.  In enacting this jurisdictional bar, Congress intended to prevent time-consuming litigation which might interfere with CERCLA's overall goal of effecting the prompt cleanup of hazardous waste sites.  Boarhead Corp. v. Erickson, 923 F.2d 1011, 1019 (3d Cir. 1991).

In past cases addressing § 9613(h), the challenging party initiated the action.  Denver claims its challenge is distinguishable because it is actually a "defense" to EPA's declaratory judgment action.  Denver cites the case of United States v. Colorado, 990 F.2d 1565 (10th Cir. 1993), cert. denied, 510 U.S. 1092 (1994), in support of its

argument. In that case, the United States brought a declaratory judgment action seeking an injunction to prevent the State of Colorado from asserting regulatory authority over the cleanup of a hazardous waste site. Colorado counter claimed, requesting an injunction to enforce its compliance order against the United States. The court held that Colorado's counter-claim did not constitute a "challenge" to the remedy chosen by the EPA, and therefore was not barred by § 9613(h), because Colorado's requirements were not inconsistent with the chosen remedy.

Aside from the procedural similarities, the <u>Colorado</u> case is clearly distinguishable. First, Colorado's compliance order "[did] not seek to halt the Army's . . . response action," but "merely [sought] to ensure that the cleanup [was] in accordance with state laws which the EPA has authorized Colorado to enforce under [the Resource Conservation and Recovery Act (RCRA), Pub. L. No. 94-580, 90 Stat. 2795 (codified at 42 U.S.C. §§ 6901 et seq.)]." <u>Colorado</u>, 990 F.2d at 1576. In other words, Colorado's compliance order imposed additional requirements, unlike Denver's zoning ordinance, which imposes contrary or inconsistent requirements. Denver contends that its zoning ordinance also imposes only additional requirements, but it misses the point that in the <u>Colorado</u> case, the state imposed additional requirements not inconsistent with the particular remedy chosen, while Denver's zoning ordinance imposes "additional requirements" on the EPA's selection of a remedy which are inconsistent with that remedy. No matter how Denver characterizes its zoning ordinance, it still constitutes a

- 11 -

challenge to EPA's chosen remedy, and we are barred from reviewing that challenge under § 9613(h).

Second, in the <u>Colorado</u> case, the state's compliance order was pursuant to RCRA, which authorizes the EPA to allow states to carry out their own hazardous waste programs in lieu of the federal RCRA program. <u>Colorado</u>, 990 F.2d at 1569. The court held that § 9613(h) did not bar enforcement actions authorized under RCRA, in part because "[w]hen Congress has enacted two statutes which appear to conflict, we must attempt to construe their provisions harmoniously." 990 F.2d at 1575. Moreover, the court concluded that the plain language of both CERCLA and RCRA provides for state enforcement of its RCRA responsibilities despite an ongoing CERCLA response action. <u>Id.</u> at 1579. By contrast, in this case Denver's zoning ordinance is not pursuant to any federal mandate, and thus does not raise similar concerns about consistency between congressional enactments.

AFFIRMED.