ARREST THE INCINERATOR
REMEDIATION (A.I.R.),
INC., Plaintiff,

v.

OHM REMEDIATION SERVICES CORP., and United States Environmental Protection Agency, Defendants.

No. 4:CV–98–0398.

United States District Court,
M.D. Pennsylvania.

April 14, 1998.

J. Michael Wiley, Rieders, Travis, Mussina, Humphrey and Harris, Williamsport, PA, Mick G. Harrison, c/o William Smedley, Jersey Shore, PA, for Arrest the Incinerator Remediation (A.I.R.), Inc.

Thomas B. Schmidt, III, John W. Carroll, John A. Greenbaum, Pepper, Hamilton & Scheetz, Harrisburg, PA, for OHM Remediation Services Corp.

Lois J. Schiffer, Robert I. Dodge, Steven Rusak, U.S. Dept. of Justice, Environment & Natural Resources Div., Washington, DC, for U.S.E.P.A.

*ORDER*

MUIR, District Judge.

THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

On March 10, 1998, Plaintiff Arrest the Incinerator Remediation, Inc., filed an equity action in the Court of Common Pleas of Clinton County, Pennsylvania which was removed to this court by the Defendant OHM Remediation Services Corporation ("OHM"). On Wednesday, March 11, 1998, Plaintiff filed a motion for a temporary restraining order and for a preliminary injunction. The principal remedy sought by Plaintiff is an injunction against the operation of a mobile incinerator at the Drake Chemical Superfund site located in Lock Haven, Pennsylvania. Doc. 3, Complaint, ¶ 85. On Friday, March 13, 1998, the United States Environmental Protection Agency filed a motion to intervene. On Monday and Tuesday, March 16 and 17, 1998, we held a hearing on the motion for a temporary restraining order. At that hearing the Environmental Protection Agency's motion to intervene as a defendant was orally granted. By order of March 19, 1998, we denied Plaintiff's motion for a temporary restraining order and reduced to writing our oral order which granted the Environmental Protection Agency's motion to intervene.

On March 20, 1998, the Environmental Protection Agency and OHM filed motions to dismiss Plaintiff's complaint for lack of subject matter jurisdiction. Defendants also argue that Plaintiff's state law nuisance claim is preempted by federal law. Those motions are fully briefed and ripe for disposition.

A chemical manufacturing facility was operated in Lock Haven by Drake Chemical Company from approximately 1940 to 1982. The soil at the site is contaminated with hazardous chemicals.[1] In 1982 the United States Environmental Protection Agency commenced cleanup efforts at the site. The Environmental Protection Agency is authorized to select the appropriate means to remediate contaminated "Superfund" sites under § 121 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. § 9621 (hereinafter referred to as "CERCLA"). In a 1988 Record of Decision, the Environmental Protection Agency chose incineration as the preferred means to remediate contaminated soil at the Drake site. The United States Army Corps of Engineers, functioning as the contracting agent for the Environmental Protection Agency, entered into a contract with OHM to operate the incinerator at the Drake site. In a November 1997 Risk Assessment Report for Incinerator Full–Scale Operation, the Environmental Protection Agency determined that full-scale operation of the incinerator would not pose a threat to public health. On February 5, 1998, OHM was issued an Air Quality Equivalency Document by the Pennsylvania Department of Environmental Protection which authorized operation of the incinerator at the Drake site. That document includes numerous environmental safeguards, including monitoring requirements and detailed equipment and operating requirements. OHM began incinerating soils at the Drake site on March 4, 1998.

Over two years ago, the Clinton County Commissioners along with interested citizens

---

1. A memorandum prepared by of the United States Environmental Protection Agency dated March 2, 1998, relating to the decision to proceed with full-scale operation of the incinerator states in part:

> The Drake Site is an inactive chemical manufacturing facility that operated from the 1940's through 1982. The facility manufactured chemicals and intermediates used in the dye, cosmetic, textile, pharmaceutical, and pesticide industries. The materials made and/or used at the facility included hazardous substances such as aniline, toluene, xylene and carcinogenic compounds such as benzene and beta-naphthyl amine (sic), both known human carcinogens.

> The Site contains a wide variety of contaminants. The soils are contaminated by volatile and semi-volatile organic compounds, base/neutral acid extractables and herbicides. Contamination is distributed throughout the soils. The uniformity of contamination and the complex chemical mixtures, as well as the public's desire that the Site be available for reuse, were key factors in the EPA's decision to incinerate all Site soils.

> Exhibit B to OHM's memorandum of law in opposition to Plaintiff's request for temporary restraining order.

brought a lawsuit against the Environmental Protection Agency to enjoin operation of a mobile incinerator at the Drake site. We dismissed that case for lack of subject matter jurisdiction. A three judge panel of the Court of Appeals, considering itself bound by an earlier decision, *United States v. Princeton Gamma–Tech, Inc.*, 31 F.3d 138 (3d Cir. 1994), reversed and remanded the case for further proceedings. The three judge panel, however, recommended that the case be heard in banc by the full court of 12 judges so that *Princeton Gamma–Tech* could be reconsidered. The Court of Appeals did so, overruled *Princeton Gamma–Tech* and affirmed our decision dismissing the action for lack of subject matter jurisdiction. See *Clinton County Commissioners v. United States Environmental Protection Agency*, 116 F.3d 1018, 1022 (3d Cir.1997)(en banc).

■ The present litigation arises from the Environmental Protection Agency's ongoing cleanup of the Drake site. The question presented in this case is whether, despite the general prohibition against challenges to on-going cleanups set forth in 42 U.S.C. § 9613(h) of CERCLA, Congress intended to allow private parties to block ongoing Superfund projects by way of state nuisance actions. The starting point for our analysis must be the Court of Appeals' opinion in *Clinton County Commissioners.* In that opinion the Court of Appeals held that "Congress intended to preclude *all* citizens' suits against EPA remedial actions under CERCLA until such actions are complete, regardless of the harm that the actions might allegedly cause." 116 F.3d at 1022 (emphasis in the original). The Court of Appeals stated that the statutory language "demonstrates beyond peradventure … that Congress intended to preclude *any judicial involvement* in EPA removal and remedial actions until after such actions are complete." *Id.* at 1023 (emphasis added). In this case the remedial action will be complete only when all contaminated soil has been treated and returned to the site.

The Court of Appeals also described the paramount federal policy underlying § 9613(h) as ensuring that Superfund clean-ups not be paralyzed by delays related to litigation. The Court of Appeals stated that "EPA removal and remedial actions are designed to deal with situations involving grave and immediate danger to the public welfare … [and] Congress apparently concluded that delays caused by citizen suit challenges posed a greater risk to the public welfare than the risk of EPA error in the selection of the methods of remediation." *Id.* at 1025.

This overriding federal policy has been recognized by the Court of Appeals for this circuit and other courts. *Boarhead Corp. v. Erickson*, 923 F.2d 1011, 1019 (3d Cir. 1991)("The limits [§ 9613(h)] establishes are designed to prevent time-consuming litigation from delaying the prompt clean-up (sic) of these sites."); *Hanford Downwinders Coalition, Inc. v. Dowdle*, 71 F.3d 1469, 1474 (9th Cir.1995)("To ensure that cleanup efforts would not be delayed by litigation, Congress included in CERCLA a Timing of Review provision. The provision, codified at 42 U.S.C. § 9613(h), prevents federal courts from exercising jurisdiction over legal challenges to ongoing CERCLA 'removal' or 'remedial' activity."); *Arkansas Peace Ctr. v. Arkansas Dep't of Pollution Control & Ecology*, 999 F.2d 1212, 1217 (8th Cir.1993)(CERCLA only permits citizens to challenge removal and remedial actions if removal and remedial actions have already been completed before suit was filed); *Schalk v. Reilly*, 900 F.2d 1091, 1096–97 (7th Cir.1990)("[C]hallenges to the procedures employed in selecting the remedy nevertheless impact the implementation of the remedy and result in the same delays Congress sought to avoid by passage of the statute; the statute necessarily bars these challenges. The judicial review itself slows the process down.").

If Plaintiff were allowed to challenge the ongoing cleanup of the Drake site under state nuisance law, either in this court or state court, Congress' clear intent to eliminate delays related to litigation would be frustrated. The "risk to the public welfare" caused by litigation delays is equally damaging whether the delay occurs as the result of state court or federal court litigation. *Clinton County Commissioners*, 116 F.3d at 1025.

Plaintiff has cited no convincing authority which allows it to challenge an ongoing cleanup of a Superfund site in a state court nuisance action. Indeed, such challenges have been found impermissible on several occasions. See *Concerned Citizens of Agriculture Street Landfill, Inc., v. Browner*, 1998 WL 104656, No. 98–1024, at *5–6 (E.D.La., March 9, 1998)(state law nuisance claims are barred under 42 U.S.C. § 9113(h)); *Citizens Against Dioxin Incineration v. Environmental Protection Agency*, No. 4:96–CV–562, slip op. at 8 (E.D. Mo., April 25, 1996)(same).

In support of its claim that it can challenge an ongoing cleanup under state nuisance law, Plaintiff cites the following portion of the Court of Appeals' opinion in *Clinton County Commissioners:*

> Finally, Congress apparently left citizens the option of obtaining relief in state court nuisance actions. See H.R. Conf. Rep. No. 99–962, at 224 (1986), reprinted in 1986 U.S.C.C.A.N. 3276, 3317 ("New section [9613(h)] is not intended to affect in any way the rights of persons to bring nuisance actions under State law with respect to releases or threatened releases of hazardous substances, pollutants, or contaminants.")

116 F.3d at 1025. The sentence of legislative history quoted by the Court of Appeals is one sentence from House Conference Report No. 99–962 dated October 3, 1986, which when downloaded from WESTLAW and printed out consists of 159 pages. The above quoted portion of the Court of Appeals' opinion does not support Plaintiff's challenge to the ongoing cleanup at the Drake site for several reasons.

First, the question of whether Plaintiff could bring a state court nuisance action was not before the Court of Appeals for this circuit in the case of *Clinton County Commissioners.* The portion of the opinion relied on by Plaintiff is dictum.

Second, the portion of the opinion cited by Plaintiff does not support its challenge to the ongoing cleanup at the Drake site because such a reading is absolutely inconsistent with the basic holding that "denial of judicial review is consistent with Congress' intention to permit EPA to eradicate environmental dam-

age with all possible speed by preventing judicial delays in the implementation of remedial actions." *Clinton County Commissioners,* 116 F.3d at 1029.

Third, even if the passage in *Clinton County Commissioners* relied on by the Plaintiff were part of the Court of Appeals' holding, it simply does not stand for the proposition that a plaintiff may invoke a state law nuisance action to challenge an ongoing Superfund remedy. Reading the disputed portion in the context of the entire opinion, there is only one reasonable interpretation: state law nuisance claims are preserved under CERCLA but they may not be used to enjoin an ongoing cleanup. This conclusion is borne out by other portions of the legislative history. House Report (Judiciary Committee), No. 99–253(III) dated October 31, 1985, reveals that citizens "suits will be against the responsible party, not the EPA. As with any other citizen suit, the citizens must notify EPA 60 days prior to filing suit so that EPA will have the opportunity to take enforcement action against the endangerment. To ensure that these suits ... will in no way interfere with government enforcement actions [the new subsection] precludes citizens from bringing suits under the entire section if EPA is diligently pursuing an administrative order or civil action ...." We recognize that House Conference Report No. 99–962 reveals that the House Amendment applying a bar to citizens suits "when the President has commenced and was diligently pursuing an administrative order" was deleted in the final version of the statute. However, the conference substitute did not delete the bar to citizens suits when "the President has commenced and is diligently pursuing a court action." Furthermore, House Conference Report No. 99–962 states:

> [T]he conference substitute [relating to citizens' suits] does not affect or otherwise impair the rights of any person under Federal, State, or common law, *except* with respect to the timing of judicial review of the selection of a response as provided in section [9613(h)] ....

(Emphasis added.) This portion of House Conference Report No. 99–962 under the general heading "Citizens Suits" clarifies the

earlier statement in the report under the general heading "Litigation, Jurisdiction, and Venue" that § 9613(h) "is not intended to affect in any way the rights of persons to bring nuisance actions under state law . . . ." [2]

The Plaintiff named OHM as a defendant. The EPA through the Army Corps of Engineers contracted with OHM to remediate the Drake site. OHM is in essence an arm of the EPA, and not a "responsible party" as contemplated by Congress. State nuisance actions, as noted, are generally preserved under CERCLA. The legislative history and the statute indicate that if EPA does not take action to remediate a Superfund site, a citizens group may file suit against the responsible party to abate a nuisance. However, once the EPA enters the picture and decides on a mechanism to remediate the site, the citizens group cannot file suit, in either state or federal court, to enjoin the remediation plan adopted by the EPA.

Moreover, where a claim asserted under state law would create a direct conflict and present an obstacle to the completion of a remediation plan selected under CERCLA, the state claim is preempted. *In re Reading Company*, 115 F.3d 1111, 1117 (3d Cir.1997); see also *United States v. City of Denver*, 100 F.3d 1509, 1512–13 (10th Cir.1996)(conflict preemption occurs where state law stands as an obstacle to accomplishment of Congress' objectives). In arguing that its state law nuisance claim is not preempted, Plaintiff relies on *Manor Care, Inc. v. Yaskin*, 950 F.2d 122 (3d Cir.1991), and *Cropwell Leasing Co. v. NMS, Inc.*, 5 F.3d 899, 901 (5th Cir. 1993). Neither case supports Plaintiff's position. The court in *Manor Care* expressly recognized that "any state law that actually conflicts with federal law is preempted." 950 F.2d at 126. In that case, the court found that New Jersey state directives requiring a responsible party to reimburse the state for

the state's share of cleanup costs at a Superfund site did not conflict with the Superfund statute and were not preempted. There was no direct conflict with the Superfund statute. Likewise, the court in *Cropwell Leasing Co.* concluded that the federal government's claim under maritime law to recover cleanup costs associated with a spill of hazardous substances from the collision of two barges did not conflict with the Superfund statute and was not preempted.

We conclude that neither this court nor a state court has jurisdiction to entertain Plaintiff's complaint and the Plaintiff's state law nuisance claim is preempted.

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1. The Environmental Protection Agency's motion to dismiss (Doc. 24) is granted.

2. OHM's motion to dismiss (Doc. 26) is granted.

3. The Clerk of Court shall close this case.

**2.** The legislative history contains statements by members of both the House and Senate conference committees which drafted § 9613(h). Senator Thurmond stated that "[t]he timing of review section is intended to be comprehensive" and "covers all lawsuits, under any authority, concerning the response actions that are per-

formed by the EPA . . . ." 132 Cong.Rec. S14929 (daily ed. Oct. 3, 1986). Representative Glickman also stated that "[t]he timing review section covers all lawsuits, under any authority, concerning the response actions that are performed by the EPA . . . ." 132 Cong.Rec. H9583 (daily ed. Oct. 8, 1986).