**WORLDWORKS I, INC., Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF THE ARMY; Robert M. Walker, in his official capacity as the Acting Secretary of The United States Army; United States Environmental Protection Agency; and Carol Browner, in her official capacity as Administrator of the United States Environmental Protection Agency, Defendants.**

**Civil Action No. 97–D–413.**

United States District Court,
D. Colorado.

Oct. 7, 1998.

Robert Ukeiley, Randall M. Weiner, Aurora, CO, for plaintiff.

Robert H. Foster, United States Dept. of Justice, Environmental and Natural Resources Division, Denver, CO, for defendant.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

DANIEL, District Judge.

This matter came before the Court on the Motion to Dismiss filed by the Defendants, United States Department of the Army, Robert M. Walker, in his official capacity as the Secretary of the United States Army;[1] the United States Environmental Protection Agency, and Carol Browner, in her official capacity as Administrator of the United States Environmental Protection Agency (hereinafter "Defendants"). The Court has carefully read and reviewed the Complaint and the applicable moving papers, and heard the argument of counsel. For the reasons set forth below, the Court grants Defendants' motion to dismiss for lack of subject matter jurisdiction.

### BACKGROUND

This case arises from the Environmental Protection Agency's ("EPA") supervised cleanup of hazardous waste contamination at the United States Department of the Army's ("Army") Rocky Mountain Arsenal ("the Arsenal"), a federal facility owned by the United States and operated by the Army. Plaintiff WorldWorks I Inc. ("Plaintiff") filed this citizens' suit under the Comprehensive Environmental Response, Compensation and Liability Act, as amended ("CERCLA"), 42 U.S.C. §§ 9601–75, specifically under section 310(a)(2) of CERCLA, 42 U.S.C. § 9659(a)(2), to require that the Army and the EPA enter into an interagency agreement ("IAG") as required by 42 U.S.C. § 9620(e)(2) (Claims One and Two) or, in the alternative, to amend the existing IAG (Alternative Claims One and Two). Plaintiff premised jurisdiction on section 310(c) of CERCLA, 42 U.S.C. § 9659(c), and the general provision for federal question jurisdiction, 28 U.S.C. § 1331.

The Arsenal is a 27–square mile site located approximately ten miles northeast of downtown Denver, Colorado. *See State of Colorado v. U.S. Department of the Army,* 707 F.Supp. 1562, 1563 (D.Colo.1989). The Arsenal was constructed in 1942, and was used by the Army to manufacture and assemble chemical warfare agents, chemical products, and incendiary munitions, as well as for the detoxification and disposal of chemical munitions and agents. *Id.* In addition, portions of the Arsenal were used by Shell Chemical Company ("Shell"),[2] for the manufacture of pesticides and herbicides. *Id.* The Arsenal is listed on the National Priorities List ("NPL"), the list of the nation's priority sites under CERCLA. 42 U.S.C. § 9604(a)(8)(B). *RSR Corporation v. EPA,* 102 F.3d 1266, 1267 (D.C.Cir.1997).

In 1984, the Army commenced its cleanup of the Arsenal pursuant to CERCLA. As part of the settlement of a lawsuit against Shell alleging Shell's liability for Arsenal contamination, EPA, Shell and the Army (along with the Department of the Interior and the Agency for Toxic Substances and Disease Registry) executed a Federal Facility Agreement ("FFA") on February 17, 1989, pursuant to section 120(e) of CERCLA and consistent with existing EPA guidance. The FFA sets forth, among other things, the detailed responsibilities of EPA, the Army and Shell for cleanup of the Arsenal, and provides that

---

**1.** Robert M. Walker has been substituted for Togo West, who is no longer Secretary of the Army.

**2.** Shell Chemical Company is now Shell Oil Company.

EPA shall have final supervisory and regulatory authority for the cleanup at the Arsenal. The Arsenal FFA is a comprehensive plan and program for the assessment, selection, implementation, and monitoring of response actions at the Arsenal. Since February 1989, all response actions at the Arsenal have been implemented pursuant to and in accordance with the Arsenal FFA. The response actions or remediation which is occurring pursuant to the FFA is not expected to be completed until the year 2011.

Plaintiff is a non-profit group, some of whose members live near the Arsenal. Plaintiff seeks to require EPA and the Army to discharge the duty to enter into the interagency agreement required by section 120(e) of CERCLA, 42 U.S.C. § 9620(e). In response, Defendants assert that this Court lacks subject matter jurisdiction over Plaintiff's claim pursuant to section 113(h) of CERCLA, 42 U.S.C. § 9613(h), and moves to dismiss this action pursuant to Fed.R .Civ.P. 12.[3]

### ANALYSIS

"Whenever it appears by suggestion of the parties that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed.R.Civ.P. 12(h)(3); *see also State Farm Mutual Automobile Insurance Company v. Dyer,* 19 F.3d 514, 518 (10th Cir.1994). The plaintiff bears the burden of establishing subject matter jurisdiction. *Thomson v. Gaskill,* 315 U.S. 442, 446, 62 S.Ct. 673, 86 L.Ed. 951 (1942); *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990). The court may look beyond the pleadings to determine whether the requisite jurisdictional facts exist. Wright & Miller, Federal Practice & Procedure Civil 2d, § 1350 at 211–13, 217–222, and 224–225 (1990).

Plaintiff brings this action under CERCLA's citizens' suit provision, 42 U.S.C. § 9659(a), which states in pertinent part:

(a) Authority to bring civil actions

*Except as provided in subsections (d) and (e) of this section and in section 9613(h) of this title (relating to the timing of judicial review), any person may commence a civil action on his own behalf—*

(1) against any person (including the United States and any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of any standard, regulation, condition, requirement, or order which has become effective pursuant to this chapter (including any provision of an agreement under section 9620 of this title, relating to Federal facilities); or

(2) against the President or any other officer of the United States (including the Administrator of the Environmental Protection Agency ...) where there is alleged a failure of the President or of such other officer to perform any act or duty under this chapter, including an act or duty under section 9620 of this title (relating to Federal facilities), which is not discretionary with the President or such other officer.

42 U.S.C. § 9659(a) (emphasis added).

Thus, the statute which authorizes civil actions is expressly subject to the timing of judicial review provision set out in section 113(h) of CERCLA, 42 U.S.C. § 9613(h). Section 113(h) explicitly prohibits, with limited exceptions, federal courts from exercising subject matter jurisdiction over legal challenges to ongoing CERCLA "removal" or "remedial" activity. *Id.* It provides, in pertinent part, as follows:

(h) Timing of review.

*No federal court shall have jurisdiction under federal law ... or under State law which is applicable or relevant and appropriate under section 9621 of this title (relating to cleanup standards) to review any challenges to removal or remedial action selected under section 9604 of this title, ... in any action except one of the following:*

\*    \*    \*    \*    \*    \*

---

**3.** The parties also filed cross-motions for summary judgment on the factual issue of whether the alleged nondiscretionary duty was discharged. Given the ruling on Defendants' motion to dismiss, the Court need not address the motions for summary judgment.

(4) *An action under section 9659 of this title (relating to citizens suits) alleging that the removal or remedial action taken under section 9604 of this title or secured under section 9606 of this title was in violation of any requirement of this chapter. Such an action may not be brought with regard to a removal where a remedial action is to be undertaken at the site.*

42 U.S.C. § 9613(h) (emphasis added).

This section has consistently been construed to mean that parties are precluded from challenging the EPA's removal or remedial actions until such actions are completed. *Clinton County Commr's v. United States EPA,* 116 F.3d 1018, 1022–23 (3rd Cir.1997); *Schalk v. Reilly,* 900 F.2d 1091, 1095–96 (7th Cir.), *cert. denied,* 498 U.S. 981, 111 S.Ct. 509, 112 L.Ed.2d 521 (1990); *see also United States v. State of Colorado,* 990 F.2d 1565, 1575 (10th Cir.1993) (§ 9613(h) does not bar federal courts from reviewing a CERCLA response action prior to its completion but it does bar any "challenges" to the CERCLA response actions). The purpose of this statute according to the Tenth Circuit's holding in *United States v. City and County of Denver,* 100 F.3d 1509, 1514 (10th Cir.1996) is the prevention of "time-consuming litigation which might interfere with CERCLA's overall goal of effecting the prompt cleanup of hazardous waste sites." Thus, to permit this case to proceed, this Court must find that Plaintiff's suit is not a "challenge" to removal or remedial action within the meaning of section 113(h) of CERCLA.

Plaintiff argues that its lawsuit, which seeks to require the Secretary of the Army and the Administrator of EPA to enter into an IAG for the Arsenal cleanup, is not such a "challenge" because Plaintiff does not seek a cleanup remedy different from the one chosen. Therefore, the relief Plaintiff seeks will not halt the present remedial activities. Defendants assert that there is already an IAG in existence between the Army and EPA; namely, the FFA, that it is the fundamental document pursuant to which the cleanup is being performed, and to require a new interagency agreement is to vitiate the existing

one, resulting in just the kind of interference with ongoing cleanups section 113(h) was intended to prevent.

The Court does not need to address whether the FFA constitutes an IAG within the meaning of the statute, since the Court finds that Plaintiff's complaint seeking a new or modified IAG is subject to the jurisdictional bar of section 113(h). Specifically, I find that requiring the parties to enter into a new IAG, when there is already a FFA in place under which significant remediation has occurred, constitutes remedial action as required for section 113(h) to apply. Under 42 U.S.C. § 9620(e)(2), an IAG is statutorily required "for the expeditious completion ... of all necessary remedial action." Accordingly, by the plain language of the statute, an IAG appears to be a component of the remediation.

Further support for my holding includes the case of *Werlein v. United States,* 746 F.Supp. 887, 892 (D.Minn.1990), *vac'd in part on other grounds,* 793 F.Supp. 898 (D.Minn. 1992). There, the court determined that an FFA that governed the cleanup of the Twin Cities Army Ammunition Plan was part of a remedial action proceeding under § 9604, and any challenge aimed at speeding up the cleanup was barred under section 113(h). Similarly, the court in *Heart of America Northwest v. Westinghouse Hanford Co.,* 820 F.Supp. 1265, 1277, 1283 (D.Wash.1993) held that actions taken pursuant to a FFA "in an integrated CERCLA response plan were remedial actions selected under section 9604." *Id.* at 1283. In so holding, the court noted that "the courts have found virtually all agency activities, both before and after formal 'selection' of a remedial plan, to be shielded from judicial review." *Id.* at 1277.

Plaintiff also argues that its action is purely a procedural challenge. However, an action to implement purely procedural changes can be a proscribed "challenge." Cases construing section 113(h) have given it broad effect, essentially holding that if a plaintiff's suit will have the effect of actually impeding a removal or remedial action, then section 113(h) will prohibit those suits. Thus, the Tenth Circuit in *City and County of Denver* held that an action by Denver seeking a

declaratory judgment that the city's cease and desist order, based on asserted violations of Denver's zoning ordinances prohibiting maintenance of hazardous waste in areas zoned for industrial use, was barred by section 113(h). 100 F.3d at 1514. Although Denver argued that *United States v. State of Colorado*, 990 F.2d 1565 (10th Cir.1993) authorized the suit, the Tenth Circuit rejected Denver's argument, holding as follows:

> Denver contends that its zoning ordinance also imposes only additional requirements but it misses the point that in the Colorado case, the state imposed additional requirements not inconsistent with the particular remedy chosen, while Denver's zoning ordinance imposes 'additional requirements' on the EPA's selection of a remedy which are inconsistent with that remedy. No matter how Denver characterizes its zoning ordinance, it still constitutes a challenge to EPA's chosen remedy, and we are barred from reviewing that challenge under § 9613(h).

*Denver*, 100 F.3d at 1514. Further, unlike *State of Colorado*, Denver's actions seeking to enforce the zoning ordinances were not pursuant to any federal mandate.

Like the *Denver* case, Plaintiff is seeking to impose additional requirements on the Defendants (that Defendants complete an IAG and/or submit schedules and arrangements for operation and maintenance) that are inconsistent with what is already in place, the FFA. Further, unlike *State of Colorado* where the state sought to enforce state hazardous waste laws that CERCLA expressly allowed for, Plaintiff is not seeking relief pursuant to any federal mandate that allows such relief. Instead, section 113(h) expressly prohibits such actions.[4]

Similarly, in *Schalk v. Reilly*, 900 F.2d 1091, 1095 (7th Cir.), *cert. denied*, 498 U.S. 981, 111 S.Ct. 509, 112 L.Ed.2d 521 (1990), plaintiffs argued that their claim was not a "challenge" to the remediation, but rather a suit to ensure that certain procedural requirements were complied with. The Seventh Circuit determined that the suit was a challenge because of its *practical impact* on the cleanup:

> [C]hallenges to the procedure employed in selecting a remedy nevertheless impact the implementation of the remedy and result in the same delays Congress sought to avoid by passage of the statute; the statute necessarily bars these challenges. The judicial review itself slows the process down.

*Schalk*, 900 F.2d at 1097 (citing *Jefferson County v. United States*, 644 F.Supp. 178, 182 (E.D.Mo.1986)); *see also Razore v. Tulalip Tribes of Washington*, 66 F.3d 236, 239 (9th Cir.1995) ("[a]n action constitutes a challenge if it is related to the goals of the cleanup").[5]

Applying the foregoing authority, this Court finds that Plaintiff's lawsuit is indeed a challenge to an ongoing remedial action at the Rocky Mountain Arsenal. A requirement by this Court that these agencies renegotiate an agreement excluding Shell, a major participant in the present cleanup activities, and/or renegotiate significant new terms in the agreement, would essentially vitiate the existing FFA between the Army, Shell and the EPA. Consequently, the ongoing cleanup would be significantly impacted. Indeed, the only purpose for requiring a new IAG (or a better one than the FFA currently in place) is to demonstrate the

---

**4.** Obviously, this case makes clear that Plaintiff's reliance on *State of Colorado* is misplaced.

**5.** Also relevant to this analysis are *Boarhead Corp. v. Erickson*, 923 F.2d 1011, 1019 (3rd Cir.1991) ("CERCLA's language shows Congress concluded that disputes about ... what measures actually are necessary to clean-up the site and remove the hazard ... should be dealt with after the site has been cleaned up"); *McClellan Ecological Seepage Situation v. Perry*, 47 F.3d 325, 330 (9th Cir.1995) (rejecting plaintiff's argument that suit to compel compliance with requirements of RCRA and the IAG was not a "chal-

lenge" to the cleanup plan, finding that the plaintiff, "for all practical purposes, seeks to improve on the CERCLA cleanup as embodied in the Interagency Agreement"); *Hanford Downwinders Coalition, Inc. v. Dowdle*, 841 F.Supp. 1050, 1059 (E.D.Wash.1993), *aff'd* 71 F.3d 1469 (9th Cir.1995) ("[I]t is difficult to understand how a declaration by the Court that the Agency has failed its statutory duties and an order to prepare ... documents satisfactory to plaintiffs does not interfere in the most basic sense with the Agency's activities").

need for a different (or better remedy) than that already selected. In other words, there would be no need for this lawsuit if Plaintiff thought the remedial effort currently selected under the FFA was adequate. Further, I have found no cases where the court concluded that the type of challenge herein does not constitute a "removal" or "remedial action" and Plaintiff has cited none.[6]

I further find that a dismissal of the case would further the purpose of the Act, since courts have broadly construed 9613(h) to encompass any type of lawsuit that will effectively delay the implementation of the remedy. *See Clinton County Comm'rs v. United States EPA,* 116 F.3d 1018, 1025 (3rd Cir. 1997) ("... Congress apparently concluded that delays caused by citizen suit challenges posed a greater risk to the public welfare than the risk of EPA error in the selection"; *Erickson,* 923 F.2d at 1019 ("Congress enacted CERCLA so that the EPA would have the authority and the funds necessary to respond expeditiously to serious hazards without being stopped in its tracks by legal entanglement before or during the hazard clean-up"); *Schalk,* 900 F.2d at 1095 and 1097 ("Congress intended by this statute to prevent unnecessary delay in implementing hazardous waste cleanups—that type of delay would surely result if plaintiffs were successful in requiring the EPA to conduct Environmental Impact Statements and further feasibility studies);of methods of remediation"); *United States v. State of Colorado,* 990 F.2d at 1576 ("Congress' expressed purpose in enacting § 9613(h) was 'to prevent private responsible parties from filing dilatory, interim lawsuits which have the effect of slowing down or preventing the EPA's cleanup activities' ").

In the case at hand, it is obvious that requiring the EPA and the Army to enter into an IAG, or to modify the IAG to come up with more comprehensive schedules and arrangements for operation and management and submit these for public participation, would necessarily cause a delay in the remediation action as well as increase the costs. The EPA and Army would have to start all over in determining what the appropriate remedy should be and submit this for public approval. Given the EPA's overall goal of cleanup of hazardous waste sites, this lawsuit appears to be the very type of piecemeal and time consuming litigation which Congress intended to avoid.

Plaintiff attempts to distinguish the above cases by arguing that it is not seeking injunctive relief to compel a certain remedy or requesting that the remedy entered into be better. Rather, Plaintiff argues that it is only seeking to ensure compliance with the statutory requirements of CERCLA. In my opinion, this does not change the result. Plaintiffs claims seeking an IAG (or a more comprehensive IAG than presently exists if the FFA is held to constitute an IAG) clearly require some form of judicial interference in, and modification to, the remedy selected by the government as addressed by the FFA. I think that the above authorities make it clear that such relief is barred by section 113(h). I therefore conclude that Plaintiff's claims are a challenge to a CERCLA cleanup, and that pursuant to section 113(h) of CERCLA, 42 U.S.C. § 9613(h) this Court has no subject matter jurisdiction to hear Plaintiff's Complaint.

In conclusion, for the foregoing reasons, it is

ORDERED that the Defendants' Motion to Dismiss is GRANTED. The Clerk is directed to enter final judgment in favor of the Defendants in accordance with this Order.

---

**6.** I also reject Plaintiff's argument that the requirement to enter into an IAG would not constitute an "action" as required in order to fall within the definition of remediation. The substantial work which would be involved in scrapping the FFA under which the remediation is now occurring and putting together an entirely new IAG would clearly involve "actions" on the part of the EPA and the Army. Further, Plaintiff has cited no authority for this argument.